United States District Court
Southern District of Texas
**ENTERED**
January 19, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Donna Jo Ware, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-20-1275 |
| | § | |
| Kilolo Kijakazi,[1] | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

## Memorandum and Recommendation

Donna Jo Ware appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. ECF No. 1. Pending before the court is Plaintiff's Cross-Motion for Summary Judgment, ECF No. 15, and Defendant's Cross-Motion for Summary Judgment, ECF No. 17. These motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Having considered the motions, administrative record, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

---

[1] Kilolo Kijakazi is Acting Commissioner of the SSA and is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g).

### 1. Procedural Posture

Ware applied for disability insurance benefits on July 12, 2017. (Tr. 49–50, 60–61, 164.) Ware claimed that she became disabled on June 16, 2017, due to rheumatoid arthritis, osteoarthritis, high blood pressure, and hypothyroidism. (Tr. 49–51, 60–62, 164, 192.) Ware was born on June 11, 1961, and was fifty-six years old on the alleged disability onset date. (Tr. 49–50, 60–61, 164.) Ware has a high school education. (Tr. 193.) Prior to filing for disability benefits, Ware worked as a data entry clerk, an administrative assistant, and a stock clerk. (Tr. 31–33, 193, 199, 211.)

The SSA denied Ware's application on August 15, 2017. (Tr. 49, 58–59.) Ware sought reconsideration on October 5, 2017. (Tr. 78.) The application was again denied on December 21, 2017. (Tr. 60, 71.) Ware requested a hearing, and Administrative Law Judge (ALJ) Daniel E. Whitney held a hearing on February 25, 2019, in Houston, Texas. (Tr. 25–48, 84–85, 108.) The ALJ issued a decision on March 26, 2019, finding that Ware was not disabled from June 16, 2017, through the date of the decision. (Tr. 9–17.) Ware filed a request for review of the ALJ's decision and filed a brief in support. (Tr. 162–63, 280–82.) On February 6, 2020, the Appeals Council denied Ware's request for review. (Tr. 1–4.) Ware timely filed a complaint and application to proceed in forma pauperis in federal court on April 7, 2020.

*See Ware v. Comm'r of Soc. Sec.*, H-20-mc-992, ECF No. 1 (S.D. Tex. Apr. 7, 2020).

## 2. Hearing

At the hearing on February 25, 2019, the ALJ heard testimony from Ware and a vocational expert (VE). (Tr. 29–47.) Ware was represented by an attorney. (Tr. 25.)

About her medical history, Ware testified that, on February 14, 2019, less than two weeks before the hearing, she received injections into her spine to treat lumbar spondylosis. (Tr. 37.) She testified that the injections provided little relief, stating that her hip was "still bad" and "all across the bottom of [her] back hurt[] pretty much nonstop." (Tr. 38.) Ware testified that, until she had learned about the back impairment, she thought the problems that she had experienced going up and down the stairs at her last job were due to a hip issue. (Tr. 37.) She testified that she had not experienced those issues at a prior job that did not involve as much walking or climbing stairs. (Tr. 38.)

Ware also testified that she had problems keyboarding because her hands would swell and hurt due to rheumatoid arthritis. (Tr. 39.) She testified that arthritis mostly affected her hands, feet, and elbows and that the knuckle and thumb were most affected in her hands. (Tr. 40.) Ware testified that she did not have arthritic nodes on her fingers, knuckles, or elbows, that she was able to make a fist on each hand, and that she could open bags of chips and bottles of water. (Tr. 41.) Ware

testified that, in November 2017, she was diagnosed with cubital tunnel syndrome. (Tr. 42.)

Based on Ware's testimony, the VE characterized Ware's past relevant work as a data entry clerk as sedentary; her past relevant work as an administrative assistant as sedentary but performed at a higher exertional level because Ware carried items "a little heavier every two weeks;" and her work as a stock clerk in a retail environment as light as performed by Ware. (Tr. 33–34, 36.)

The ALJ asked the VE what work a hypothetical individual of the same age, education, and vocational background as Ware could perform if limited to:

> sitting six hours, standing and walking six hours, lifting 20 pounds occasionally, 10 pounds frequently, occasional climbing, no climbing ladders, ropes, or scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling, frequent handling and fingering.

(Tr. 45.) The VE testified that such an individual would not be able to perform the data entry position because it required constant fingering. *Id.* The VE also excluded the stock clerk position because, as performed, it involved some climbing and because it was commonly performed at a medium exertional level. (Tr. 46.) The VE, however, found that the hypothetical individual would be able to perform Ware's prior work as an administrative assistant. *Id.* Ware's attorney cross-examined the VE. (Tr. 46–47.)

The ALJ issued his decision on March 26, 2019, finding that Ware was not disabled from June 16, 2017, the alleged disability onset date, through the date of the decision. (Tr. 9–17.)

### 3. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program. *See* 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2017).

This court's review of the ALJ's disability determination is highly deferential, and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial

evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin,* 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 4. Analysis of the ALJ's Determination

#### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2017). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2017).

The ALJ correctly found that Ware had not engaged in substantial gainful activity since the alleged disability onset date of June 16, 2017. (Tr. 11.)

#### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments is severe and has lasted or is expected to last a continuous period of at least twelve

months. 20 C.F.R. § 404.1509 (2017); 20 C.F.R. § 404.1520(a)(4)(ii) (2017); *see also* 20 C.F.R. § 404.1505(a) (2017). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2017).

An impairment is *not* severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) *(quoting Loza v. Apfel,* 219 F.3d 378, 391 (5th Cir. 2000)) (stating word for word the standard articulated in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)); *see also* SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985) (stating that an impairment is not severe "when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"). The Fifth Circuit recently confirmed that the SSR 85-28 articulation comports with the *Stone* standard. *See Keel*, 986 F.3d at 556. "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Ware had the following severe impairments: "rheumatoid arthritis and osteoarthritis." (Tr. 11.) The ALJ found gastroesophageal reflux disease, carpal and cubital tunnel syndrome, fibromyalgia, and hypothyroidism to be

7

nonsevere impairments. (Tr. 12.) Addressing all of these, the ALJ stated, "[N]o treating or examining source noted clinical signs of any limitations related to these impairments; nor did the State agency physicians indicate any work-related limitations because of these impairments." *Id.* About carpal and cubital tunnel syndrome, the ALJ pointed to physical examinations showing mildly reduced ranges of motion in Ware's hands and wrists and a normal range of motion in her elbows. *Id.*

The ALJ found that obesity did not affect her functional limitations more than minimally and affirmed that he considered the effects of obesity at later steps in his analysis. (Tr. 12.) The ALJ analyzed limitations in the four broad areas of mental functioning caused by depression and found that they were no more than mild, concluding that depression was not a severe impairment. (Tr. 13.) The ALJ also found that claimant's complaint of headaches did not constitute a medically determinable impairment. (Tr. 12.) About Ware's recent diagnosis of lumbar spondylolisthesis and radiculopathy, the ALJ noted that prior lumbar examinations had been normal and found that her "alleged back impairment ha[d] not existed for the durational period required to constitute a severe impairment." *Id.*

Ware argues that the ALJ's step-two determination is not supported by substantial evidence because the ALJ failed to apply the proper legal standard in addressing the duration requirement. Specifically, Ware argues the ALJ erred by

failing to address whether Ware's lumbar spondylolisthesis *was expected* to last for at least twelve months. ECF No. 16 at 8–9. The court is not persuaded that the ALJ erred or that any error would require remand.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity" because of a medical impairment "which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 1509 (2017) (defining "duration requirement"). Thus, the ALJ must consider at step two whether the claimant has a severe medically determinable impairment that meets the duration requirement. 20 C.F.R. § 1520(a)(4)(ii) (2017). In 2000, the SSA clarified that the "expected to last" issue arises "only when the claim is being adjudicated within 12 months after the onset of the person's inability to work and the evidence shows that the impairment currently prevents substantial gainful activity." 65 Fed. Reg. 42772-1, 2000 WL 925487, at *42774 (2000); *see also Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002) (upholding the SSA's interpretation). In other words, absent evidence that the impairment causes more than a minimal effect on the ability to work, the expected duration of the impairment is irrelevant.

As argued by Ware, the ALJ in this case addressed only whether the back impairment had existed for twelve months without any mention of its *expected* duration. Even so, Ware may not rely merely on evidence that the diagnosis of

spondylolisthesis would subsist for at least a year. A "diagnosis is not, itself, a functional limitation." *Dise v. Colvin*, 630 F. App'x 322, 326 (5th Cir. 2015). Ware still must provide evidence of limitations and show that her back impairment had more than a minimal effect on her ability to work at the time of the ALJ's review. *See* 65 Fed. Reg. 42772-1, 2000 WL 925487, at *42774 (2000); SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). The burden is Ware's to make that showing. *Cf.* 20 C.F.R. § 404.1512(a)(1) (2017) (stating that the claimant bears the burden of proving that she is disabled); *Keel*, 986 F.3d at 555 (stating that the claimant bears the burden of proof on the first four steps).

In support of her argument that the ALJ erred by not discussing whether the back impairment was *expected* to last for the duration requirement, Ware cites an internet medical source that states, "While [spondylolisthesis] won't go away on its own, you can often experience relief through rest, medication and physical therapy." *Id.* at 10. The website does not and cannot address the effect that spondylolisthesis had on Ware's own ability to work.[2] Ware points to nothing in the record that shows

---

[2] The court also notes that Ware did not submit this information to the ALJ. *See* 20 C.F.R. § 404.1512(a) (2017) (requiring a claimant to submit to the SSA all evidence that relates to whether the claimant is disabled). It is not the court's responsibility to consider evidence in the first instance. *Salmond*, 892 F.3d at 817 (alteration in original) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) ("We do not 'reweigh the evidence in the record, try the issues *de novo*, or substitute [our] judgment for the Commissioner's . . . .'")).

that her back impairment caused more than a minimal effect on her ability to work at any time during the relevant period.[3]

The court's independent review of the record confirms that substantial evidence supports the ALJ's finding that Ware's back impairment was not severe.[4] Ware's medical record shows that, on January 20, 2019, magnetic resonance imaging (MRI) revealed:

> Multilevel degenerative changes of the lumbar spine which appear most pronounced at L4-L5 where there is trace grade 1 anterolisthesis, severe bilateral facet arthrosis, and suspected anteriorly projecting right synovial cyst resulting in bilateral subarticular zone stenosis with suspected mass effect on the descending bilateral L5 nerve roots, right greater than left.

(Tr. 813.)

On February 14, 2019, an orthopedist diagnosed Ware with spondylolisthesis of lumbar region, lumbar spondylosis, and low back pain. (Tr. 976–77.) The physical exam results on that day showed straight stance without spinal curvature or asymmetry; no muscle spasm; no abnormal masses; normal gait; full, stable, and pain-free bilateral hip and knee range of motion; intact bilateral lower extremity

---

[3] Ware testified that she experienced pain when climbing stairs prior to her diagnosis of spondylolisthesis. That is not sufficient to show that her back impairment caused more than a minimal effect on her ability to work.

[4] Ware argues that the ALJ could not rely on the state agency reviewing consultants' opinions that Ware had no limitations from this impairment because no evidence of the impairment was before them. The ALJ did not indicate that he relied on the state agency reviewing consultants' opinions in evaluating Ware's back impairment. (Tr. 12.) The record contains other substantial evidence in support of the ALJ's step-two determination.

motor exam; normal balance; and symmetrical deep tendon reflexes in lower extremities. (Tr. 976.) Ware exhibited right leg pain on range of motion of the thoracolumbar spine, and the straight leg raising test was positive on the right side. *Id.* The doctor recommended bilateral epidural steroid injections. (Tr. 977.) Ware underwent the procedure to administer the injections immediately after the appointment. (Tr. 978–990.) Ware reported no pain after the procedure and, the following day, reported pain at a level of four out of ten. (Tr. 990, 1025.) The record contains no subsequent objective medical evidence concerning her back impairment.

The ALJ considered the diagnosis and treatment of lumbar spondylolisthesis and radiculopathy. (Tr. 12.) At most, her subjective testimony indicates that she experienced pain when climbing stairs prior to the alleged disability onset date. (Tr. 37.) Because Ware fails to show that her back impairment caused any work-related limitations, she has not met her burden at step two. *See* 20 C.F.R. § 404.1520(c).

Ware also argues that the ALJ erred in finding carpal and cubital tunnel syndrome to be nonsevere. ECF No. 16 at 11–12. Specifically, Ware argues that "the ALJ relied on only one examination from the entire longitudinal record and ignored the nature of the medical opinions of record." ECF No. 16 at 12.

The ALJ based his finding that carpal and cubital tunnel syndrome was a nonsevere impairment on physical examinations that showed only "a mildly reduced

range of motion in her hands and wrists[] and a normal range of motion in her elbows" (Tr. 12.) For these findings, the ALJ cited a physical examination by Ware's rheumatologist on November 1, 2018. (Tr. 628.) The ALJ pointed out that no medical source noted clinical signs of any limitations related to carpal and cubital tunnel syndrome and certain other nonsevere impairments. (Tr. 12.) The ALJ also found "no indication in the record that [Ware] required anything more than conservative treatment." *Id.*

Ware argues that the ALJ "wholly ignored" examination findings of positive tests for Tinel's, Phalen's, and carpal compression, notations of palpable fullness, and electromyography (EMG) showing bilateral cubital tunnel neuropathy and failed to acknowledge that Ware required surgical intervention for left-side cubital tunnel syndrome. *See* ECF No. 16 at 12 (citing Tr. 524, 552, 563, 569).

The court's independent review of the record confirms that substantial evidence supports the ALJ's finding that Ware's carpal and cubital tunnel impairment was not severe. Ware's medical record shows that, on October 9, 2017, Ware first saw Mark Ciaglia, D.O., for assessment of "left wrist cyst and bilateral numbness and tingling." (Tr. 522.) Radiographs of her hands taken at the appointment returned normal results. (Tr. 522, 524.) Dr. Ciaglia performed carpal tunnel diagnostic tests, including Tinel's test, Phalen's test, and carpal tunnel compression test, which all returned positive results bilaterally. (Tr. 524.) Physical

13

examination of Ware's left wrist cyst showed palpable fullness. *Id.* Dr. Ciaglia recommended an EMG to confirm his "high suspicion" for carpal tunnel syndrome and scheduled surgical excision of the left wrist cyst. *Id.* Ware saw Dr. Ciaglia for a follow-up after the EMG, was diagnosed with left cubital tunnel syndrome, and, on December 12, 2017, underwent endoscopic decompression of left cubital tunnel. (Tr. 549, 552–53, 563–65, 569.)

One week after the decompression procedure, Ware reported doing well with "little to no pain[.]" (Tr. 556.) On February 7, 2018, Dr. Ciaglia saw Ware, who complained of "persistent weakness and some numbness in the operative hand[,]" and "some sensitivity on her left elbow when pressure is applied" but reported "gradual but slow improvement in symptoms." (Tr. 557, 560.) She also reported that it was "better compared to pre-operative status." (Tr. 560.) Dr. Ciaglia noted "improvement in the sensation of the nerve distribution, although [Ware] still has some residual symptoms" and compared her condition after the procedure to the "sever[e] neuropathy" shown on the pre-operative EMG. *Id.*

Ware points to the opinion testimony of Randall Johnson, M.D., her rheumatologist, apparently in support of limitations associated with carpal and cubital tunnel syndrome. *See* ECF No. 16 at 14 (stating that Dr. Johnson was the only opining medical source to evaluate Ware after she developed carpal and cubital

tunnel syndrome[5]). Elsewhere in her brief, however, Ware stated that Dr. Johnson "did not treat [Ware] for her carpal or cubital tunnel syndrome." ECF No. 16 at 12.

According to the form Dr. Johnson completed, he offered his opinion on Ware's limitations associated with her diagnosis of rheumatoid arthritis. (Tr. 534.) Regarding limitations of her upper extremities, Dr. Johnson opined that Ware was only able to occasionally lift ten pounds and that she was able to spend ten percent of the workday on each of the following: (1) grasping, turning, and twisting objects; (2) performing fine manipulation; and (3) reaching. *Id.* The ALJ addressed Dr. Johnson's opinion that Ware "should be limited to less than sedentary work due to rheumatoid arthritis[,]" finding it "inconsistent with the normal findings on most of the claimant's physical examinations[] and . . . with the mild limitations in her ranges of motion found in later examinations." (Tr. 16.) In considering and in articulating his consideration of Dr. Johnson's opinion, the ALJ complied with 20 C.F.R. § 404.1520c (2017) (explaining how medical opinions are to be considered and articulated and what factors are to be used).

The ALJ considered the medical findings. (Tr. 12.) Ware points to nothing in the record that shows that this impairment caused more than a minimal effect on her ability to perform basic work activities. Ware's subjective testimony was that she

---

[5] The court notes that the burden was on Ware to submit evidence supporting her claimed limitations. 20 C.F.R. § 404.1512(a)(1) (2017).

would have difficulty keyboarding because of rheumatoid arthritis. (Tr. 39.) At the hearing, Ware reported no limitations associated with carpal and cubital tunnel syndrome.[6] Because Ware fails to show that carpal and cubital tunnel syndrome caused any work-related limitations, she has not met her burden at step two.

The ALJ acknowledged that he must consider all impairments, severe or not severe, in his analysis of Ware's residual functional capacity (RFC). (Tr. 11.) That he did so is illustrated in his RFC determination discussed below. Because the ALJ continued beyond step two and considered all impairments in determining the RFC, any error made at step two did not prejudice Ware. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected."); *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001) ("This Court requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision.").

---

[6] Ware testified that she was never diagnosed with carpal tunnel syndrome. (Tr. 42.) That seems supported by the medical records. Dr. Ciaglia had "high suspicion" that Ware had carpal tunnel syndrome but, after reviewing the EMG, listed cubital tunnel syndrome as Ware's diagnosis. (Tr. 524, 552.) The actual diagnosis is not important as it does not affect the court's analysis.

## C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii) (2017); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2017). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2017); *Whitehead*, 820 F.3d at 780–81.

The ALJ found that Ware's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. (Tr. 14.) The ALJ appropriately considered Listing section 14.09 (inflammatory arthritis). *Id.*

The court's review of the record shows that substantial evidence supports the ALJ's step-three findings. Ware does not dispute these findings.

## D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's RFC "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e) (2017); *see Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). An RFC assessment is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The RFC determination is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3) (2017); *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) (stating that the RFC determination is the "sole responsibility of the ALJ."). Consequently, the ALJ has the authority to interpret the medical evidence. *See id.* at 603. The ALJ determined that Ware had the RFC:

> to perform light work . . . except with the following limitations: the clamant is capable of occasional climbing, but no climbing of ladders, ropes or scaffolds; and occasional balancing, stooping, kneeling, crouching and crawling. The claimant is capable of frequent handling and fingering.

(Tr. 14.)

The ALJ asserted that he considered the medical opinions, the prior administrative medical findings, Ware's self-reported symptoms, and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 14.) The ALJ found that Ware's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 15.)

Ware argues that the ALJ did not address either her back impairment or the carpal and cubital tunnel syndrome in the RFC determination, thus erring in finding her capable of light work and frequent handling and fingering. As discussed above, the ALJ considered both her back impairment and carpal and cubital tunnel syndrome at step two and found them not to be severe. The ALJ further considered all severe and nonsevere impairments in determining the RFC. Related to the back impairment, The ALJ limited Ware to light work, which means lifting no more than twenty pounds at a time and no more than ten pounds frequently and limited climbing, balancing, stooping, kneeling, crouching, and crawling to occasional. 20 C.F.R. § 404.1567(b) (2017). The ALJ found Ware not capable of continuous handling and fingering and limited her to handling and fingering frequently, which means "occurring from one-third to two thirds of the time." SSR 83-10, 1983 WL 31251, at *6 (1983). The court thus concludes that the ALJ did include limitations addressing Ware's back impairment and carpal and cubital tunnel syndrome. Ware has not shown that she required more limitations than the ALJ included in the RFC.

## E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2017); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled.

20 C.F.R. § 404.1520(f) (2017). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1) (2017).

The ALJ found that Ware could perform past relevant work. (Tr. 16.) The ALJ relied on the hearing testimony of the VE that an individual of Ware's age, education, and RFC could not perform her past work of data entry because it required continuous fingering but could return to her past relevant work as an administrative assistant because "the demands of said past work would not exceed the [RFC]." (Tr. 16, 45.) Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, it is substantial evidence supporting the ALJ's determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (citing *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995), as holding that the ALJ may rely on the VE's testimony) ("The ALJ expressly and rightly relied on the testimony of [the VE] in reaching th[e] conclusion" that the claimant could perform certain types of jobs).

Finding Ware not disabled at step four, the ALJ did not reach step five. *See* 20 C.F.R. § 404.1520(a)(4) (2017) (stating that a finding of not disabled or disabled at any step ends the analysis). The court's review of the administrative record reveals that the ALJ employed the correct legal rules and that the findings at each of the five steps were supported by substantial evidence.

**5. Conclusion**

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on January _19_, 2022.

Peter Bray
United States Magistrate Judge